UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LENARD BERRIAN,

                Plaintiff,

-against-

STATE OF NEW YORK UNIFIED COURT SYSTEM; JUDGE LAURA WARD; JUDGE EDUARDO PADRO, IN THEIR OFFICIAL CAPACITIES,

                Defendants.

18-CV-7787 (CM)

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff, appearing *pro se*, brings this action alleging that Defendants violated his constitutional rights. By order dated June 17, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff Lenard Berrian, who identifies himself as an individual with a history of mental illness, brings this civil rights complaint seeking monetary damages in the amount of $5,000,000 for years spent in prison, the expungement and sealing of Indictment #4193/2004, and "preliminary injunction from the instant enforcement of parole supervision as soon as possible."[1] Named as Defendants are the State of New York Unified Court System, Judge Laura Ward, and Judge Eduardo Pardo.

Plaintiff alleges the following facts. In September 2014, Plaintiff was released from the Bellevue Hospital Psychiatric ward into the custody of the "CASES:ACT Team." (*Id.* at 3.) An ACT Team Representative escorted Plaintiff to a Mentally Ill Chemical Addiction (MICA) shelter. Because he had been stabbed in two different MICA shelters, Plaintiff decided to live on the streets. On September 4, 2014, one week after being released from the hospital, Plaintiff was arrested for possession of a controlled substance, a felony, and subsequently indicted under indictment number 4193/14.

During his detention, Plaintiff contacted the Nathaniel Project, an alternative-to-incarceration program for nonviolent felons with a history of mental illness. In November 2014, a representative from the Nathaniel Project came to court and represented to Judge Laura Ward

---

[1] Plaintiff lists the following bases for jurisdiction:

Title II American Disabilities Act
504 of the Rehabilitation Act
14th Amendment United States Constitution
Pennsylvania v. Yeskey, 524 U.S. 206 (1998)
Tennessee v. Lane, 541 U.S. 509 (2004)
United States v. Georgia, 546 U.S. 151 (2006).

(Compl. at 1.)

that Plaintiff could enroll in the Nathaniel Project if the court ordered it. Plaintiff asserts that Judge Ward did not respond and adjourned the proceedings to a later date.

Plaintiff alleges that Judge Ward determined that the only way Plaintiff could get into a drug program was through the court's judicial diversion drug treatment court, if Plaintiff first pleaded guilty to the charge. Plaintiff took a plea in April and then went to drug treatment court before Judge Eduardo Padro. Plaintiff asserts that he went to drug treatment court "for approximately 4 to 5 months, sometimes 2 to 3 times a month and there was never a lawyer to represent [him]." (*Id.* at 4-5.) Plaintiff continuously asked to represent himself, but Judge Padro informed Plaintiff that he needed to be represented by counsel. Judge Padro appointed a lawyer and told Plaintiff that he was "going to float [his] report to see if any programs will be ready and working with [him]." (*Id.* at 5.)

Three weeks later, Judge Padro informed Plaintiff that he was rejected from all programs because of his mental condition, Intermittent Explosive Disorder. Plaintiff's lawyer asked for another chance to try to find a suitable program for Plaintiff, and Judge Padro granted the request and adjourned Plaintiff's case until November 4. Plaintiff informed the mental health discharge planner at Rikers Island of his situation, and the discharge planner connected Plaintiff to the Bronx Forensic Link, a program that provides services to the mentally ill. A representative came to Rikers Island to meet with Plaintiff, and after signing authorization forms, Plaintiff was assured that they could find him the type of program he needed.

At the next court date, Judge Padro indicated that Plaintiff's mental health assessment was problematic. Plaintiff and his attorney spoke to the judge about Bronx Forensic Link, but Plaintiff asserts that Judge Padro paid no attention to them. Plaintiff alleges that when Judge Pardo was asked if he wanted to give Plaintiff a chance, he answered "no." (*Id.* at 6.)

Plaintiff's case was transferred back to Judge Ward for sentencing. Plaintiff informed the court that he felt that he was being discriminated against because of his diagnosis. He also mentioned that he wanted to take back his plea. Judge Ward denied Plaintiff's request to take back his plea and then sentenced Plaintiff to parole supervision. Plaintiff asserts that he understood the sentence to be 90 days inside a facility and three years on parole.

After being sentenced, Plaintiff submitted a notice of appeal. He was then transferred to a state facility and began serving the 90-day parole supervision sentence. One week before the completion of the sentence, Plaintiff was visited by an attorney who told Plaintiff that an Assisted Out-Patient Treatment (AOT Order) was being sought by the New York State Office of Mental Health (OMH), and that Plaintiff had to go to court to see a judge, and he would then be released to parole supervision. Plaintiff was notified by the facility that he was scheduled to go to court. Plaintiff thought that he was going to see a judge regarding the AOT order, but he was instead escorted to Judge Ward's court and informed that he needed to be resentenced. Plaintiff complained that because he had already completed the 90-day sentence, and that he had already completed two thirds of the time of the three-year sentence being offered, there was no point in his taking his plea back.

Plaintiff alleges that the New York State Unified Court System failed to accommodate MICA defendants in the drug court by failing to work with certain drug programs. He alleges further that Judge Ward discriminated against him when she didn't acknowledge the Nathaniel Project representative, but instead required Plaintiff to plead guilty before he could be considered for the judicial diversion program; that she created a double jeopardy situation when she resentenced Plaintiff after the sentence had already been completed; and that she made a misrepresentation at Plaintiff's resentencing when she said her hands were tied because of the

4

diversion statute. Plaintiff alleges that because of his mental illness, he was denied access to a judicial diversion program.

## DISCUSSION

**A.     Claim Under 42 U.S.C. § 1983**

Because Plaintiff alleges that his federal constitutional rights were violated , the Court interprets Plaintiff's allegations as raising claims under §42 U.S.C. 1983. Section 1983 provides a redress for deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *see Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48–49 (1988).

**B.     Eleventh Amendment**

Plaintiff's claims against the New York State Unified Court System must be dismissed. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

The Eleventh Amendment bars Plaintiff's claims against this Defendant from proceeding in federal court. *See Gollomp*, 568 F.3d at 368 (holding that the New York State Unified Court System "is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment

sovereign immunity"). The Court therefore dismisses Plaintiff's claims against this Defendant. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

**C.      Judicial Immunity**

Plaintiff's claims against Judge Laura Ward and Judge Eduardo Padro must also be dismissed. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. This amendment generally precludes a plaintiff's claims for injunctive relief against a judge arising from rulings or actions taken in that judge's judicial capacity because the plaintiff can usually appeal that judge's rulings or actions in an appellate court. *See, e.g.*, *Berlin v. Meijias*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017), *appeal dismissed*, No. 17-3589 (2d Cir. May 22, 2018).

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

6

Plaintiff's claims against Judge Ward and Judge Padro arise of out of their rulings and actions while presiding over Plaintiff's state-court criminal proceedings; such rulings and actions were within the scope of their judicial capacities and jurisdiction. The Court therefore dismisses Plaintiff's claims against Judge Ward and Judge Padro under the doctrine of judicial immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute]."); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

**D.** ***Heck v. Humphrey***

Because Plaintiff was convicted and because he does not allege that the conviction was reversed, expunged, or otherwise declared invalid, the Court cannot grant Plaintiff the relief he seeks. These claims are barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The United States Supreme Court has explained:

> that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (italics in original); *see Heck*, 512 U.S. at 486-87 ("[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*[.]").

Because success on Plaintiff's claims would necessarily imply the invalidity of his conviction, and because Plaintiff has not alleged that his conviction was overturned or otherwise invalidated, *Heck*'s favorable termination rule bars these claims for money damages. *See Perez v. Cuomo*, No. 09-CV-1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983."). The Court must therefore dismiss Plaintiff's § 1983 claims regarding his conviction. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

**E.     Section 1983 as *Habeas Corpus* Relief**

Plaintiff may not obtain expungement and sealing of an indictment in a § 1983 action; he can only obtain such relief by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)) (noting that writ of *habeas corpus* is sole remedy for prisoner seeking to challenge the fact or duration of his confinement). A state prisoner may not circumvent the exhaustion requirement for *habeas corpus* relief by requesting release from custody in a civil action. *Preiser*, 411 U.S. at 489-90.

To the extent that this submission can be construed as a § 2254 petition, the petition must be dismissed because it does not demonstrate that plaintiff has exhausted his available state remedies in accordance with 28 U.S.C. § 2254(b) and (c).[2] *See Coleman v. Thompson*, 501 U.S.

---

[2] Plaintiff should note that under the Antiterrorism and Effective Death Penalty Act of 1996, which modified the *habeas corpus* statutes, a person in state custody must generally file a § 2254 petition within one year from the latest of four benchmark dates: (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the constitutional right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d).

722, 731 (1991) ("[A] state prisoner's federal *habeas* petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."). Plaintiff may file a petition for a writ of *habeas corpus* once all available state remedies have been exhausted.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) – (iii).

The Clerk of Court is directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: July 3, 2019
        New York, New York

                                                    COLLEEN McMAHON
                                                  Chief United States District Judge